**Wytheville.**

LAKE v. TYREE.

JUNE 14th, 1894.

1. PRACTICE AT COMMON LAW—*Pleading—Demurrer.*—Where a plea avers no injury to defendant from the fraudulent misrepresentation as to the lot referred to in it : *held,* a demurrer lies to the plea.
2. IDEM—*Declarations of agent—Hearsay.*—Agent's admission binds principal only when made whilst the transaction is going on.   If made afterwards, it is mere hearsay.
3. IDEM—*Evidence—Bills of exceptions.*—In determining questions of admissibility of evidence, this court cannot look outside of the bills of exception taken to its exclusion.
4. IDEM—*Instructions—Burden of proof.*—In action on check given for price of land, there is a plea of *nil debet* and also a special plea of fraud in the sale, and the jury is instructed that the defendant must prove his special plea, but the plaintiff's duty to prove the case made in his declaration is ignored : *held;* such instruction works no injury to the defendant where it is given after the evidence relating exclusively to the special plea, has been closed.
5. IDEM—*Modern covenants.*—Such covenants, now used in place of ancient warranty, may affect the nature and quality of the thing sold, but are stipulations in the conveyance and not representations to induce the purchase of the thing sold.
6. IDEM—*Verdict—Judgment.*—Where in action of debt on a check, declaration demands a sum certain and interest, there is a verdict for "the amount of the debt in the declaration mentioned " : *held,* the judgment may be for "the principal and charges of protest with interest thereon from the date of such protest."   Code, § 2853.
7. SALE OF LAND—*Misrepresentations—Opinions.*—In order to support action of deceit, or suit in equity for rescision, misrepresentations must be of a material fact inducing the purchase, and on which purchaser has a right to rely, and did rely, and whereby he was actually misled to his injury. *Lowe* v. *Trundle,* 78 Va., 65.   But representations that lots sold are

"good building lots, and valuable," are mere expression of opinions
not constituting actionable fraud, where there is no intent to defraud,
and seller uses no artifice to prevent him from making inquiries or ex-
aminations as to the lots, and they are at hand and accessible.

8. IDEM—*Case at bar.*—Plaintiff induced defendant to buy certain lots by
representing them to be level and suitable for building on. Neither had
ever seen them. Same day defendant found the lots deeply gullied—
one thirty feet below level of street, the other on a steep declivity.
Seeing this, he demanded his check given for the price. Plaintiff used
no artifice to prevent defendant from examining the lots, which were
accessible : *held,* the defendant is without remedy.

Argued at Richmond.    Decided at Wytheville.

Error to judgment of circuit court of Madison county, ren-
dered September 20, 1891, in an action of debt on a protested
inland bill of exchange, wherein William R. Tyree was plain-
tiff, and Robert P. Lake was defendant.    Judgment having gone
against the latter, he obtained a writ of error and *supersedeas*
from one of the judges of this court.    Opinion states the case.

*James G. Field* and *Rixey & Barbour,* for plaintiff in error.

*Jas. Hay* and *T. C. Gordon,* for defendant in error.

LEWIS, P., delivered the opinion of the court.

This was an action of debt to recover the amount of a cer-
tain check for $1,100, and $2 50, costs of protest.    The check
was given by the defendant to the plaintiff on the 9th of Octo-
ber, 1890, in payment of ten shares of the capital stock of the
Goshen Land and Improvement Company and four lots of land
situate in Goshen, which had been drawn, the day before, by
the plaintiff as the owner of the said shares.    The defendant
pleaded the general issue, and also two special pleas, under sec-
tion 3299 of the Code, averring fraud in the procurement of
the contract in question.    To the first special plea there was a

demurrer, which was sustained; and issue having been joined
on the remaining pleas, the parties went to trial, which resulted
in a verdict and judgment for the plaintiff.

1. As to the first ground of error, viz.: the sustaining of the
demurrer to the first special plea, it is enough to say that there
is no averment of injury to the defendant in consequence of
the alleged fraudulent misrepresentations in regard to the value
and description of the lots referred to in the plea, which ren-
ders the plea clearly bad.   The defence set up in the plea is an
equitable one, allowed by the statute, in the nature of a cross
action for the recission of the contract; and in such a case, as
in an action of deceit, the complainant must allege and prove
(1) fraud, on the one side, and (2) consequent injury to the com-
plainant, on the other; for fraud consists, not in mere inten-
tion, but in intention carried out by hurtful acts.   It consists
of conduct that operates prejudicially on the rights of others.
That "fraud without damage, or damage without fraud, gives
no cause of action" in such a cause is an ancient rule of the
common law for which the citation of authority is unnecessary.

2. The next question relates to the exclusion of certain evi-
dence at the trial.   It appears that in the afternoon of the day
on which the transactions in question occurred, and after the
check had been delivered to the plaintiff, the defendant, accom-
panied by one Wilson, went out to inspect the lots, which were
in the immediate vicinity.   Wilson was a real estate agent at
Goshen, in whose hands the plaintiff had placed the lots "for
sale"; and the offer at the trial was to prove that when the in-
spection was made Wilson said to the defendant: "These lots
are not such as I represented to you.   It is evidently a fraud,
and I do not think you should take them."

This evidence the lower court excluded, and, as we think,
correctly.   The rule is that the admission or declaration of
an agent binds the principal only when it is made during
the continuance of the agency, in regard to a transaction
then depending *et 'dum fervet opus,* and if not thus made it

is no part of the *res gestæ*, but hearsay, and therefore inadmissible. 1 Greenl. Ev., sec. 113; *Virginia and Tennessee Railroad Co.* v. *Sayers*, 26 Gratt., 328. Here the declaration sought to be proved was not made during the continuance of the agency, but after it had ceased to exist. The contract was executed; the transaction had been terminated; or, as the defendant himself testified, the sale had been "closed." The bargain was made, and the check for the purchase price delivered before dinner, and the declaration made "after dinner," with an interval, perhaps, of several hours between them. When the sale was closed the business was completed, and the agency was *functus officio;* and there is no more reason for holding that it continued two hours thereafter than there would be to say that it continued as many years thereafter, or that it will continue indefinitely.

It was also contended in the argument at the bar that the declaration ought to have been received, on the ground that it was reported to the plaintiff in the presence of Wilson and the defendant, and not contradicted by the plaintiff. But as to this it is enough to say that there is no mention of any such fact in either of the bills of exception that were taken to the exclusion of the evidence, and in determining this branch of the case we are not at liberty to look outside of those bills.

3. The next question, then, is: Ought the verdict to have been set aside on the ground that it was contrary to the law and the evidence? The defence set up in the second special plea was that the contract was procured by fraud—that is, that the plaintiff represented the lots to be smooth and level, and suitable for building purposes, which representation, it is alleged, were false, and fraudulently made with intent to deceive and defraud the defendant, &c.

The general rule in regard to misrepresentations in the sale of property which will support an action of deceit or a suit in equity for rescission, is that the representation must be in regard to a material fact, constituting an inducement to the con-

tract, on which the complainant had a right to rely, and did rely, and by which he was actually misled to his injury. *Lowe v. Trundle*, 78 Va., 65. The mere expression of an opinion, however, even in strong and positive language, is no fraud, though it be false. Such statements are not fraudulent in law, because, as was said by Judge Staples in *Grim v. Byrd*, 32 Gratt., 293, they do not, ordinarily, deceive or mislead, but are considered, as the Supreme Court of the United States expressed it in a recent case, as " trade talk," which is allowable. *Southern Development Co. v. Silva*, 125 U. S., 247.

In the early case of *Bayly* v. *Merrel*, Cro. Jac., 386, it was adjudged that "the law gives no remedy for voluntary negligence," and so the law is at the present day. Hence, generally speaking, if the parties have equal means of information, so that, with ordinary prudence or diligence, either may rely on his own judgment, they are presumed to have done so; or, if they have not done so, they must abide the consequences of their own folly or carelessness.

Upon this subject Judge Cooley says: "Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them. Therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence. " It is for this reason," he adds, "that redress is often refused where fraud is alleged in the sale of property which was at hand, and might have been inspected, and where the alleged defect was one which ordinary prudence would have disclosed." Cooley, Torts, 487:

It was on this principle that *Parker* v. *Moulton*, 114 Mass., 99, was decided. There it was held that false representations by the vendor to the vendee concerning the value of the land sold,

its condition, or adaptation to particular uses, will not entitle the vendee to relief, unless he is fraudulently induced to forbear inquiries or examination which he would otherwise have made; and that if fraud of the latter description is relied on, it must be specifically set forth in the pleadings.

To the same effect is *Long* v. *Warren*, 68 N. Y., 426, which, also, was the case of a sale of land, and in which this whole subject was fully considered. The substance of the decision was that where it appears that the real quality of the property was at the time of sale obvious to ordinary intelligence; that it was at hand, open for inspection; that both vendor and purchaser had equal knowledge or equal means of acquiring information; that nothing was said or done by the vendor to throw the purchaser off his guard, or to divert him from making the inquiries and examination which a prudent man ought to make; and that he omitted to make them, or to avail himself of the means and opportunities at his hand, relying upon false representations of the vendor, he cannot sustain an action for fraud.

"The common law," says Chancellor Kent, "affords to every one reasonable protection against fraud in dealing, but does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information." 2 Kent, Comm., 485.

This pithy statement of the law was quoted with approval in *Smith* v. *Richards*, 13 Pet., 26; and in the subsequent case of *Slaughter* v. *Gerson*, 13 Wall., 379, it was laid down as the established doctrine, in conformity with the authorities already cited, that where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations; that if, having eyes, he will not see matters directly before them, where no concealment is made or at-

tempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by over-confidence in the statements of another.

Bishop tersely states the rule deducible from the authorities to be that "the law, departing from the rule in morals, tolerates a good deal of lying in trade, when in the nature of merely puffing one's own goods or depreciating those of another, provided the thing bargained about reveals its own qualities, and is open to the parties' equal inspection." Bish. Cont., sec. 664, citing, among other cases, *Hill* v. *Bush*, 19 Ark., 522; *Poland* v. *Brownell*, 131 Mass., 138.

Coming now to apply these principles to the present case, it is to be observed, in the first place, that the evidence (not the facts) being certified, the defendant occupies in this court the position of a demurrant to evidence; thus necessarily waiving all of his own evidence in conflict with that of the plaintiff, and admitting the truth of the plaintiff's evidence. This leaves the facts of the case to be considered few and simple.

· The defendant testified that he went to Goshen, on the occasion in question, without any intention of investing in property there, but that soon after his arrival he was solicited by the plaintiff to purchase the stock and lots in question, who represented the lots to be smooth and level, and suitable for building purposes. He says he had never seen the lots, but that, relying on the representations of the plaintiff, he agreed to purchase, and that thereupon "the sale was closed." Afterwards, on the same day, he went with the agent (Wilson) to inspect the lots, he says, and found them, not as they had been represented to him, but "badly washed into deep gullies"; that one of them was "in a boggy gorge, thirty feet below the level of the street"; and another on a steep declivity; that seeing this, he at once returned to the plaintiff, and declared he had been deceived, and demanded the return of his check, &c.

But all this, so far as the alleged representations are con-

cerned, the plaintiff denies, and, on a demurrer to evidence, must be laid out of view. He testifies that he made no representations of any sort to the defendant, and had no conversation with him on the subject of the lots, or their character or value; that he himself had never seen them, and that the property was sold "as a pig in a bag." It was also proven that he was a non-resident of the State.

Wilson, however, as a witness for the defendant, testified that when *he.* approached the defendant with a suggestion to purchase, he, as the plaintiff's agent, represented to him that "the lots were good building lots, and valuable." He says further that at that time he had never seen them, and that when he and the defendant afterwards inspected them he saw they were not what he had represented them to be. It is not claimed, however, that he was guilty of intentional fraud; and it is obvious, besides, that his representations were the mere expression of an opinion—viz: that they were "good building lots, and valuable." Nor is it proved, or even alleged, that either the plaintiff or Wilson used any artifice to dissuade or prevent the defendant from making inquiries or examination touching the lots, which he could easily have done, as they were at hand and accessible. So that, having been thus indifferent to the ordinary and available means of information, the law gives him no redress against the consequences of his own voluntary negligence or folly.

4. Complaint is also made of the action of the trial court in giving certain instructions for the plaintiff and in refusing to give others offered by the defendant. One of those given for the plaintiff was this: "Under the pleadings in this cause the defendant cannot rely on any breach of warranty made by the plaintiff."

There is certainly nothing in this instruction to the prejudice of the defendant. The defence was not founded on an alleged breach of warranty, for there was no warranty in the case, but on an alleged fraudulent sale; and while the modern

covenants which have taken the place of the ancient warranty, may, as the appellant insists, affect the nature and quality of the thing sold, yet these, as the name implies, are stipulations in *a deed* of conveyance. 2 Min. Insts., 638.

The court also instructed the jury that "the burden of proof is on the defendant to establish the defence set up in his special plea, in order to relieve him of the liability created by the inland bill of exchange sued on." The objection urged to this instruction is that it ignored the duty of the plaintiff to establish the case made in the declaration, which was contested by the plea of *nil debet.* The instruction, however, worked no injury to the defendant, because it was given after the evidence had been closed, and the evidence, after the check sued on had been introduced before the jury, related exclusively to the defence set up in the special plea.

As to the remaining instructions, we need only say that, in the light of the principles applicable to the case, which has been stated, there is nothing in them to the prejudice of the defendant.

5. The next and last assignment of error is that the court erred in giving a judgment for interest. The verdict was simply for "the amount of the debt in the declaration mentioned," which, as stated in the declaration, was "the sum of $1,102 60, *with interest* thereon from the 14th of October, 1890, until paid," and there was judgment accordingly, with costs. Section 2853 of the Code provides that in a case of this sort judgment may be given "for the principal and charges of protest, with interest thereon from the date of such protest." The legal effect of the verdict was a finding for the principal sum mentioned in the declaration, with interest, as therein claimed; so that the judgment is in conformity both with the verdict and the statute.

FAUNTLEROY, J., dissented.

JUDGMENT AFFIRMED.