### ROLLISON v. WASHINGTON NAT. INS. CO.

#### No. 5854.

United States Court of Appeals
Fourth Circuit.

Argued June 21, 1949.

Decided July 30, 1949.

Lester S. Parsons, Norfolk, Va. (Venable, Parsons, Kyle & Parsons, Norfolk, Va., on the brief), for appellant.

W. R. C. Cocke and Leigh D. Williams, Norfolk, Va. (Williams, Cocke & Tunstall, Norfolk, Va., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

J. K. Rollison brought suit for damages which he claims to have suffered through the termination as of March 31, 1947, by the Washington National Insurance Company, the defendant, of an agency contract between them under which Rollison was authorized to write insurance policies in the name of the company. He first brought suit in the state court of Virginia on October 13, 1947, wherein the complaint alleged that the company had wrongfully taken over the business without his consent and in utter disregard of his rights. Subsequently the case was removed to the federal court where an answer denying the allegations of the complaint was filed.

Thereafter a pre-trial conference was held and the plaintiff was granted leave to amend his complaint. On December 22, 1947 he filed a detailed complaint setting out the contracts under which he acquired the agency from a predecessor agent, and an answer was filed thereto in due time. Thereafter interrogatories were addressed to the plaintiff and answered, and the case came on to be heard before the court on motion of the defendant to strike certain answers of the plaintiff, and to require full and direct answers to certain of the interrogatories. Upon the hearing of this motion it appeared to the District Court from an examination of the pleadings and after a conference with the attorneys, that the pleadings on file did not clearly present the claim of the plaintiff or the defenses of the defendant, and the court thereupon ordered the action to be repleaded. The plaintiff was directed to file within twenty days a new complaint containing a clear statement of all the claims of the plaintiff against the defendant, especially a statement of the basis of the asserted ownership of the plaintiff in the business of the agency as well as the particulars of any fraud or misrepresentation charged by the plaintiff; and the defendant was directed to answer the complaint within twenty days after receipt thereof. In compliance with this order, the plaintiff on August 5, 1948 filed a repleader which constituted his third attempt to state his cause of action, and the defendant filed an answer. The case then came on for hearing before the court, and a jury was sworn, but upon a further examination of the pleadings, exhibits and answers to interrogatories, the court after hearing argument reached the conclusion that the plaintiff had failed to state a case, either in contract or in tort, and upon motion of the defendant, discharged the jury and entered an order dismissing the complaint. A motion of the plaintiff to be allowed to enter a voluntary dismissal was denied.

The complaint is discursive and argumentative, but the gist of the action may be stated as follows: Rollison acquired the agency at the instance of the company pursuant to negotiations with one Ramey, its

vice-president and secretary, who prepared and witnessed the first of two written assignments dated January 9, 1933 by which Rollison acquired a one-half interest in the agency from a predecessor agent. By this assignment Rollison agreed to assume one-half the liability and obligations of the agency under its contracts and amendments to contracts with the company the same as if he had signed such contracts; both parties assigned to the company their respective interests in the agency, to be held as security for the agency's obligations to the company until the agency had been built up to a monthly collectible debit of $5,000; and it was further agreed that the contract was not transferrable or assignable without the written consent of an officer of the company and that said company should direct the operations of the agency at all times. On August 7, 1933, Rollison acquired the remaining one-half interest in the agency from his predecessor, subject to the preceding assignment, and agreed again to assume the payment of all of the obligations of the agency under its contract and amendments with the company.

The obligations which Rollison thereby assumed were contained in an original contract of August 16, 1926, and supplemental agreements between the company and his predecessor dated January 10, 1931 and May 14, 1932 respectively. The original contract, as so modified, required the agent to remit to the company 14 per cent. of the renewal premiums collected by him, and acknowledged the receipt of $10,000 by the agent from the company and provided that if the agreement should be terminated by company action, this sum should be deducted from any sum which would then become due and payable by the company to the agent. The contract further provided that if it should be terminated by the company, the agent should be paid in cash an amount equal to two times the monthly premium income at the date of termination, after which the business, with all its assets and resources, should become the property of the company. The premium income of the agency on April 1, 1947, amounted to $5252.47, so that under the contract the amount due by the company to the agency

upon the termination of the relationship was $10,484, less the sum of $10,000 for which the agent was indebted to the company. The balance of $484.94 was tendered to and accepted by the plaintiff without prejudice to his claim that the indebtedness of $10,000 had already been discharged prior to the termination of the contract in 1947.

Rollison denied the company's right to deduct the sum of $10,000 on the ground that the debt had been previously paid in compliance with the terms of an alleged oral agreement between him and one Ramey, a representative of the company, whereby the written contracts between the company and the former agent were modified. Under the terms of the oral agreement, 2 per cent. of the 14 per cent. of the premiums payable by the agent to the company was to be credited upon the $10,000 indebtedness, and Rollison claimed that by the application of these credits between 1933 and April 1, 1947, the entire $10,000 indebtedness had already been discharged.

A crucial point in the case relates to the legal validity of the oral agreement. Rollison claims that it modified the original contracts and controlled the relations between the parties because it was made after he had subjected himself to the obligations of the original contracts by the assignments of 1933. The record in the case, however, does not sustain this contention. Rollison's sworn answers to the interrogatories of the company clearly show that all negotiations and conversations between him and Ramey referred to in the pleadings took place in Richmond, Virginia, on and prior to January 9, 1933, when he took his first assignment of a half interest in the agency from his predecessor. This written agreement and that of August 7, 1933, whereby he acquired complete ownership of the agency, merged all prior oral negotiations, whether these agreements are regarded as a novation whereby he was substituted for his predecessor in direct contractual relationship with the company, or the company is considered merely as a third party creditor beneficiary of the contracts of purchase. Liles v. Cox, 215 Ala. 327, 110 So. 716; Williston, Contracts,

Rev.Ed.1936, § 647, Note 13. The judge correctly held that the parol evidence rule barred proof of the verbal agreement.

It is suggested that even if Rollison may not recover for breach of the oral contract, he may have a case in tort based upon alleged fraudulent misrepresentations of fact of the company's representative during the oral negotiations, whereby Rollison was induced to assume the obligations of his predecessor. These misstatements are variously phrased in the pleadings but they may be reduced to the following items: (1) that the monthly debit of the agency in 1933 was $5,000 whereas it was in fact only $2,000; (2) that the contract between the company and the predecessor agent called for payment of only 12 per cent. of the commissions to the company whereas the contract actually entitled the company to 14 per cent. of the commissions; and (3) that the contract provided that if the agency should be terminated by the company the business of the agency would become the property of the agent whereas the contract provided that upon such a contingency, the agent should be paid two times the monthly premium income, and thereupon the business, with all its assets and resources, should become the property of the company.

Looked at from this angle, the action seems to sound in tort; but even if it be so considered, it cannot be sustained in view of the admitted facts, as the District Judge held. He pointed out that the contracts of assignment clearly showed that the monthly debit was less than $5,000 in 1933, since they provided that until the agency "had been built up to a monthly collectible debit of $5,000," the plaintiff's interest in the agency was to be held as security for the agency's obligations to the company; and that moreover, the plaintiff had taken charge of the agency and enjoyed the profits thereof for fourteen years with full knowledge of the amount of the monthly business during this period.

The other misrepresentations upon which the plaintiff claims to have relied relate to the contents of written documents whose existence in 1933 the plaintiff concedes. It is alleged that the company deliberately withheld and concealed information from Rollison as to the nature of the contractual relationship between it and the prior agent, but Rollison knew of the existence of the prior agent's contracts, for he agreed in writing to be bound by them, and it was clearly within his power to demand their production and to inspect them before he subjected himself to their obligations. His failure to take this ordinary business precaution constituted such a lack of reasonable care and prudence as to deprive him of a right of action in Virginia on the ground of misrepresentation or of fraud. In Costello v. Larsen, 182 Va. 567, 29 S.E. 2d 856 and Lake v. Tyree, 90 Va. 719, 19 S.E. 787, the court approved the rule which disposes of this phase of the plaintiff's case and is thus set out in Cooley on Torts, 4th Ed., § 355, as follows [182 Va. 567, 29 S.E. 2d 858]: " 'Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them. Therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence.' "

It is obvious from the above recital of the course of the proceedings in the District Court that the plaintiff had full opportunity to present his case in its most favorable aspect, and that the judge was fully justified in the exercise of his discretion under Rule 41 of the Federal Rules of Civil Procedure, 28 U.S.C.A., in denying the plaintiff's motion to take a voluntary dismissal.

Affirmed.