**Alexandria**

CAROLYN SUSAN WELLS

v.

ANTHONY ROLAND WELLS

No. 1887-89-4

Decided March 5, 1991

COUNSEL

Joseph A. Condo (Beth A. Bittel; Rees, Broome & Diaz, on brief), for appellant.

Anthony Roland Wells, pro se.

OPINION

**KOONTZ, C.J.**—On November 3, 1989, the circuit court entered a decree denying the petition of Carolyn Susan Wells, appellant, to set aside a property settlement agreement with her husband, Anthony Roland Wells, appellee. On appeal, Mrs. Wells asserts the trial court erred by finding that upon entering into the prop- erty settlement agreement she could not and did not reasonably rely on false statements made under oath by Mr. Wells. She also asserts the trial court erred in refusing to award costs and attor- ney fees incurred by her to establish Mr. Wells' misrepresenta- tions, and abused its discretion by failing to hold Mr. Wells in contempt and to impose sanctions on him for perpetrating a fraud on the court.

We state only the essential facts giving rise to this appeal. Mr. and Mrs. Wells entered into a property settlement agreement on January 9, 1989 in which Mrs. Wells waived spousal support. On February 10, 1989, a final decree of divorce was entered that affirmed, ratified and incorporated that agreement. Within twenty-one days, Mrs. Wells filed a petition to suspend or vacate the final decree based on affidavits indicating Mr. Wells made material misrepresentations in a deposition taken six days before Mrs. Wells executed the settlement agreement. The misrepresentations concerned Mr. Wells' employment, living arrangements, and income.

A full hearing on the merits of Mrs. Wells' petition was held on October 4, 1989. The court found Mr. Wells failed to tell the truth in his deposition about his employment, income, residence, and the status of Wells International, a company Mr. Wells created. For example, Mr. Wells stated he had not received compensation or benefits from Wells International since 1987 and did not expect to receive anything in the future; in fact, Mr. Wells was entitled to ninety-eight percent of the profits and was the sole signatory on the company's bank account. Despite Mr. Wells' misrepresentations, the court found Mrs. Wells did not reasonably rely on them. The court reasoned that any reliance placed upon Mr. Wells' sworn statements was unreasonable since she had been married to him for fourteen years and, therefore, she had to know he was a "professional prevaricator." Furthermore, the court found she could not reasonably rely on Mr. Wells' statements since she suspected he was not truthful about his employment and failed to take action in a timely fashion to discover any inaccuracies in his deposition.

On October 14, 1989, Mrs. Wells petitioned the court to reconsider its decision, to find Mr. Wells in contempt, and to award her costs and attorney fees. The court denied the petition and this appeal followed.

■ To rescind a contract on the ground of fraud, a party must show by clear and convincing evidence there was a material misrepresentation made that was reasonably believed and detrimentally relied upon by that party. *See Drewry v. Drewry*, 8 Va. App. 460, 470-71, 383 S.E.2d 12, 17 (1989); *Jefferson Standard Life Ins. Co. v. Hedrick*, 181 Va. 824, 833-34, 27 S.E.2d 198, 202 (1943); *Nationwide Ins. Co. v. Patterson*, 229 Va. 627, 629, 331

S.E.2d 490, 492 (1985). In other words, "if one represents [to a person] as true what is really false, in such a way to induce a *reasonable* man to believe it, and the representation is meant to be acted on," and that person detrimentally acts on the misrepresentation, there is an action based on fraud. *Jefferson Standard Life Ins. Co.*, 181 Va. at 833-34, 27 S.E.2d at 202 (emphasis added). "On appeal we review the evidence in the light most favorable to the prevailing party and determine whether that evidence established as a matter of law any of the grounds relied upon to vitiate the agreement and decree." *Drewry*, 8 Va. App. at 463, 383 S.E.2d at 12-13.

 "[T]o determine fraud the relationship between the parties and the duties, if any, owed to one another define the standards by which their conduct and transaction will be judged." *Derby v. Derby*, 8 Va. App. 19, 27, 378 S.E.2d 74, 78 (1989). "Generally, when spouses separate with the intention to divorce and propose to divide or settle their property interests, they have assumed adversarial roles and no longer occupy a position of trust." *Drewry*, 8 Va. App. at 470, 383 S.E.2d at 17; *Derby*, 8 Va. App. at 27, 378 S.E.2d at 78; *Barnes v. Barnes*, 231 Va. 39, 42, 340 S.E.2d 803, 804 (1986). They are considered to be dealing at arms length. *Drewry*, 8 Va. App. at 470, 383 S.E.2d at 17; *Derby*, 8 Va. App. at 27, 378 S.E.2d at 78; *Barnes*, 231 Va. at 43, 340 S.E.2d at 805.

On appeal, Mrs. Wells argues that since she received no benefit from the fiduciary relationship that was inherent in her dealings with her husband before this action arose, it is inappropriate to hold her to a standard of knowledge akin to that fiduciary relationship by not allowing her to rely on her husband's statements made under oath. By doing so, she claims the circuit court held her to a standard far greater than the "reasonable man" standard set forth in *Jefferson Standard* and subsequent Virginia cases. We find her argument compelling and agree.

Mr. Wells and Mrs. Wells, as a matter of law, were adversaries dealing at arms length when they entered the property settlement agreement. Any special fiduciary or trust relationship based on their past marital relationship was no longer in existence or a factor during the creation of the agreement. Consequently, standard contract law is applicable to this case.

 At the hearing, the trial court faulted Mrs. Wells for not discovering the inaccuracies of Mr. Wells' statements before en-

tering the agreement since she conceded that she suspected Mr. Wells was not being truthful. As a general rule, a person has a right to rely on a representation " '*quoad* the maker, and need make no further inquiry.' " *Cerriglio v. Pettit*, 113 Va. 533, 544, 75 S.E. 303, 308 (1912) (quoting *Lowe v. Trundle*, 78 Va. 65, 69 (1883)). While the common law affords reasonable protection against fraud in dealing, it " 'does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information.' " *Harris v. Dunham*, 203 Va. 760, 771, 127 S.E.2d 65, 72 (1962) (quoting 2 Kent Comm. 485, quoted in *Lake v. Tyree*, 90 Va. 719, 724, 19 S.E. 787, 789 (1894)). However, one "must not say or do anything to throw [another] off his guard or to divert him from making the inquiries and examination which a prudent man ought to make." *Horner v. Ahern*, 207 Va. 860, 864, 153 S.E.2d 216, 219 (1967); *Lake*, 90 Va. at 724, 19 S.E. at 789.

Significantly, all of Mr. Wells' misrepresentations were made under oath. Even though a party may suspect another party of making false statements, statements made under oath are commonly accepted and relied upon as true. Such falsehoods may also cause even a prudent person to refrain from making further inquiries. Thus, Mrs. Wells was entitled to rely upon Mr. Wells' statements even though she had suspicions concerning their veracity. If a person knows in fact that statements made under oath are false, reliance on such statements may be unreasonable; nothing in this record suggests, however, that Mrs. Wells had actual knowledge. Here, the trial court, after determining that Mr. Wells made false, material representations concerning his financial situation, erroneously concluded Mrs. Wells did not reasonably rely on these misrepresentations. The court specifically found Mrs. Wells "had to know" Mr. Wells was making misrepresentations based on their past marital relationship, which was legally no longer of consequence. Based on the record, we hold that Mrs. Wells could reasonably have relied on Mr. Wells' statements made under oath. Accordingly, we reverse the judgment of the trial court and vacate that portion of the final divorce decree which affirmed, ratified and incorporated the parties' property settlement agreement. We remand to the trial court the issues of the determination of the parties' property and spousal support rights which result from the invalidity of their settlement agreement.

Since the trial court based its refusal to award Mrs. Wells attorneys' fees and costs incurred during her attempt to establish Mr. Wells' misrepresentations, based on its erroneous ruling that Mrs. Wells did not reasonably rely on Mr. Wells' misrepresentations, we direct the trial court to reevaluate its refusal in light of our decision on the previous issue.

Finally, turning to the issue of whether the trial court erred in failing to hold Mr. Wells in contempt, we conclude that because it was within the discretion of the trial court whether or not to find Mr. Wells in contempt, we need not address the issue.

*Reversed in part and remanded.*

Barrow, J., and Duff, J., concurred.