COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Kelsey, Alston and Decker
Argued at Alexandria, Virginia


MICHAEL A. KERNBACH

v.        Record No. 1070-13-4

NANCY J. KERNBACH

MEMORANDUM OPINION[*] BY
JUDGE ROSSIE D. ALSTON, JR.
JANUARY 28, 2014


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

David L. Duff (The Duff Law Firm, on brief), for appellant.

David M. Zangrilli, Jr. (Odin, Feldman & Pittleman, PC, on brief),
for appellee.


Michael Kernbach appeals an order holding him in contempt for failing to fulfill his

obligations under the parties' separation agreement with respect to the parties' marital residence.

For the reasons that follow, we affirm the trial court.

I.  Background[1]

On appeal, this Court reviews the evidence in the light most favorable to the party

prevailing below, in this case wife.  Derby v. Derby, 8 Va. App. 19, 26, 378 S.E.2d 74, 77

(1989).

Michael (husband) and Nancy Kernbach (wife) were divorced on November 20, 2011.

On October 3, 2011, prior to the final decree of divorce, the parties entered into a separation

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As the parties are fully conversant with the record in this case and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of the disposition of this
appeal.

agreement that addressed, among other things, the parties' rights and obligations with respect to the marital residence. This agreement was incorporated into the final decree of divorce.

Paragraph 13 of the separation agreement specified the parties' respective rights and obligations to the marital residence. Subsection A(i) of Paragraph 13 addressed husband's option to refinance the home. Under that subsection, husband possessed "the option to refinance the mortgage . . . until March 1, 2012," at which time wife would "permanently vacate" the residence and execute a general warranty deed transferring her ownership interest in the residence to husband. Upon refinancing, husband would pay wife $60,000 for her share of the equity in the residence.

The agreement further stated in Paragraph 13A(ii) that "[i]f Husband does not refinance the mortgage before March 1, 2012, then the [r]esidence shall be listed for sale . . . no later than March 15, 2012." Until the sale of the residence, "[n]either party shall have exclusive use and possession of the [r]esidence, and both parties shall be allowed to reside in the [r]esidence . . . ." Moreover, in the interest of selling the residence "as quickly as possible," the agreement specified the process to select a realtor: "[t]he parties shall jointly agree upon a realtor[, or] if the parties are unable to agree . . . then each party shall propose three realtors . . . and one name shall be selected [at random] by the parties' counsel." Finally, upon sale of the residence, the agreement provided that "the net proceeds shall be divided equally between the parties."[2]

Husband did not refinance the residence by March 1, 2012, and wife remained in the residence until June 22, 2012. On August 7, 2012, wife provided notice to husband via letter that he was in violation of numerous obligations under the parties' separation agreement. Of importance here, wife informed husband that his option to refinance the home had closed and,

---

[2] In the event that husband "paid . . . Wife $60,000 pursuant to Paragraph 12 . . . for her share in the equity of the [r]esidence," such payment would later be applied toward wife's fifty-percent share of the net sales proceeds.

accordingly, the residence needed to "be immediately listed for sale." To that end, wife proposed a realtor to manage the listing and, in the event husband disagreed with her choice, requested that husband select his proposed realtor. Husband did not respond to wife's request.

In December of 2012, wife filed a motion for a rule to show cause, contending that husband failed to comply with the parties' separation agreement. Wife alleged that husband failed to comply with his obligation to pay wife $60,000 for her interest in the residence; failed to refinance the residence by March 1, 2012; and, after electing against his option to refinance the residence, husband failed to list the residence for sale by March 15, 2012.

The trial court issued the rule to show cause and held a contempt hearing on April 25, 2013. During the hearing, wife expressed her desire to list the residence for sale. She explained that "[the parties] have a very sizeable tax [lien]" against the residence and the use of the funds from the sale of the house could be "used to pay off the tax debt."

Husband asserted during the hearing that he attempted to refinance the residence prior to March 1, 2012, but was advised by his mortgage lender (GMAC) that the residence could not be refinanced while wife resided in the home. Husband made no other attempts to refinance the residence prior to the March 1, 2012 deadline. He further testified that he was given notice in May of 2012 that GMAC had filed for bankruptcy and "a freeze ha[d] been imposed on [all GMAC] transactions . . . including all refinancing . . . applications." Husband renewed his attempt to refinance the residence in February of 2013 when Green Tree Servicing purchased GMAC.

On May 10, 2013, the trial court issued an order finding husband in contempt for his failure to comply with Paragraph 13A(ii) of the parties' separation agreement by not listing the marital residence for sale by March 15, 2012. The order instructed husband that he could purge the contempt by listing the residence for sale. This appeal followed.

## II. Analysis

When a separation agreement is incorporated into a final decree of divorce, the trial court is permitted to use its contempt power to enforce the terms of the agreement. Owney v. Owney, 8 Va. App. 255, 259, 379 S.E.2d 745, 748 (1989). Whether to do so in a particular case lies within the discretion of the trial court. Wells v. Wells, 12 Va. App. 31, 36, 401 S.E.2d 891, 894 (1991). "[T]hus, we review the exercise of a court's contempt power under an abuse of discretion standard." Petrosinelli v. People for the Ethical Treatment of Animals, Inc., 273 Va. 700, 706, 643 S.E.2d 151, 154 (2007).

"As a general rule, 'before a person may be held in contempt for violating a court order, the order must be expressed rather than implied.'" Winn v. Winn, 218 Va. 8, 10, 235 S.E.2d 307, 309 (1977) (quoting Wood v. Goodson, 485 S.W.2d 213, 217 (Ark. 1972)). "'[T]he process for contempt lies for disobedience of what is decreed, not for what may be decreed.'" Id. (quoting Taliaferro v. Horde's Adm'r., 22 Va. (1 Rand.) 242, 247 (1822)).

Here, the trial court's order is clear. The separation agreement specifies that if husband failed to refinance the residence before March 1, 2012, the "residence . . . be listed for sale . . . no later than March 15, 2012." "[A] PSA is governed by the same rules of construction applied to other contracts." Stacy v. Stacy, 53 Va. App. 38, 44, 669 S.E.2d 348, 351 (2008) (*en banc*). "'[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself . . . .'" Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985) (quoting Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983)) (alteration in original).

On appeal, husband contends that wife breached the terms of the separation agreement by not vacating the residence by March 1, 2012, and that her "breach of the [separation agreement] prevented Husband's initial efforts at complying with the requirement for March 1, 2012

refinancing." Relying on the principle that "a party to a contract cannot . . . prevent its performance and then seek relief for its nonperformance," husband asserts that the trial court erred in ordering husband to sell the residence.

We find this argument unpersuasive. Wife's right to reside in the residence and husband's option to refinance were coterminous: The express language of the separation agreement permitted wife to reside in the residence while husband pursued refinancing. Wife's conduct, therefore, did not excuse husband's nonperformance. See Whitt v. Godwin, 205 Va. 797, 800, 139 S.E.2d 841, 844 (1965) (noting that while courts have recognized "[t]here is an implied condition of every contract that one party will not prevent performance by the other party[,] . . . [i]t is manifest that this principle has no application when the hindrance is due to some action of the promisor which he was permitted to take under either the express or implied terms of the contract"). More importantly, wife's dwelling in the residence had no bearing on the trial court's finding of contempt, even if as a factual matter it precluded husband from refinancing (at least through GMAC). Rather, it was husband's failure to list the residence for sale by March 15, 2012, not his failure to refinance, that the trial court considered contemptible.

For similar reasons, we reject husband's contention that the trial court erred in ordering the sale of the residence because the refinancing provision of the separation agreement was impossible to perform given the unforeseen bankruptcy of GMAC. Citing Housing Authority of the City of Bristol v. East Tennessee Light & Power Company, 183 Va. 64, 31 S.E.2d 273 (1944), husband contends that GMAC's bankruptcy "created [an] unexpected cessation of a condition" that the parties relied upon in forming the separation agreement and excused husband's failure to timely refinance. This argument strains credulity. GMAC's "continued viability" in May of 2012 bore no relevance to husband's option to refinance by March 1, 2012, as the separation agreement required husband to "submit [his] application . . . and all other

- 5 -

required documents to the lender in sufficient time to meet [the March 1, 2012] deadline." See Housing Authority, 183 Va. at 73, 31 S.E.2d at 277 (noting that "non-performance of [a] contract" is excused if "the act to be performed is necessarily dependent on the continued existence of a specific thing [that] . . . perish[ed] . . . *before the time for performance*" (quoting 12 Am. Jur. Contracts § 372)).

Moreover, as explained above, husband's narrow focus on his option to refinance under the separation agreement neglects the issue before this Court, namely, whether the trial court erred by finding husband in contempt for *his failure to list the residence for sale by March 15, 2012*, as required by the parties' separation agreement. At most, husband's arguments explain why he did not exercise his option to refinance the residence prior to the March 1, 2012 deadline, but not why he chose to disregard the express order in the separation agreement to list the residence for sale by March 15, 2012.

Upon hearing the evidence, including husband's explanation for his conduct, and wife's testimony that she proposed a realtor and apprised husband of the need to list the residence for sale before requesting a rule to show cause, the trial court found that husband's conduct constituted willful disobedience of the trial court's order. Accordingly, it held husband in contempt. The record supports this decision, and we find no abuse of discretion. The trial court is, therefore, affirmed.

### III. Attorney's Fees

Wife has requested an award of attorney's fees and costs incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Having reviewed and considered the record in this case, we hold that wife is entitled to a reasonable amount of attorney's fees, and we remand for the trial court to set a reasonable award of attorney's fees

incurred by wife, including any attorney's fees and costs incurred in preparation for the remand hearing.

## IV. Conclusion

For the foregoing reasons, the trial court's ruling is affirmed. We remand this case to the trial court for determination and award of the appropriate attorney's fees and costs.

<u>Affirmed and remanded.</u>