UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges McCullough, Chafin and Russell
Argued at Richmond, Virginia


SAMANTHA IRENE CARRANO

                                                  MEMORANDUM OPINION[*] BY
v.        Record No. 0693-15-4          JUDGE STEPHEN R. McCULLOUGH
                                                  JANUARY 26, 2016

FRANK ALBERT CARRANO


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Jeanette A. Irby, Judge

Lawrence D. Diehl (Ann Brakke Campfield; Barnes & Diehl, P.C.,
on brief), for appellant.

No brief or argument for appellee.


Samantha Carrano challenges several aspects of an order addressing her former husband

Frank Carrano's spousal and child support obligations.  She contends that the court erred in (1) *de

facto* modifying the parties' property settlement agreement; (2) failing to award her attorney's fees,

and (3) making its initial calculation of child support.  We agree and reverse.

BACKGROUND

I. THE DIVORCE AND SETTLEMENT AGREEMENT

The parties were divorced in 2011.  Husband and wife signed a detailed property Settlement

Agreement.  This Agreement is quite favorable to the wife – she was represented by counsel,

whereas husband was not.  As relevant to this appeal, it provided that husband must pay spousal

support in the amount of $1,800 per month until the death of husband or wife, her remarriage, or the

arrival of April 1, 2020.  He was also required to pay $1,441 in monthly child support.  Husband

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

also agreed to provide health insurance for the minor children born of the marriage, as well as for his stepson, Kevin. Under the Agreement, that coverage is to continue

> until each child is no longer eligible for health insurance coverage as provided by law. If there is no health care plan available for the children, including his step-son, Kevin . . . through [husband's] employer, [husband] agrees to privately obtain a health care coverage for the children and to assume the cost of obtaining that health care coverage.

Finally, the Agreement specifies that

> [i]n the event that either party should take legal action against the other by reason of the other's failure to abide by this Agreement, the party who is found to be substantially in violation of this Agreement shall pay to the party who substantially prevails in said action, the prevailing party's full and actual attorney's fees, investigators costs, court costs and any other costs reasonably incurred in the enforcement of this Agreement.

The final order ratified, affirmed, and incorporated, but did not merge the Agreement.

## II. THE ENFORCEMENT ACTION

On January 27, 2014, wife filed a petition for a rule to show cause, in which she contended that husband had not complied with the terms of the Agreement with regard to spousal support, child support, providing insurance for his stepson Kevin, and paying down her attorney's fees. She noted that husband had accumulated significant arrears, at that point in excess of $60,000. On November 12, 2014, husband filed a petition requesting, among other things, modification of his child support.

The court heard evidence from both husband and wife. Wife testified that husband had failed to fully comply with the Agreement and accompanying court order and that he was in arrears. Husband did make consistent child support payments, but he was falling far behind in his spousal support payments, and he was making no progress at all on reducing the balance of attorney's fees he owed.

- 2 -

Husband was terminated from the job he held during the marriage. He obtained a new job that paid significantly less than his previous job, but the hours were more stable and predictable. The job husband held at the time of the hearing paid him $1,730.40 every two weeks, or $3,460.80 monthly. His then-current annual pre-tax pay from his employer fell just shy of $45,000 per year. Wife, in contrast, earned over $50,000 from her employer in 2014. Husband testified that he rents a home for $2,600 each month and incurs the customary expenses for utilities, food, and transportation. He does not contribute to a retirement plan. Husband acknowledged that in the past he had earned money performing side jobs, but said he was not currently doing so.

When husband was fired from his former job, he received an after-tax payment of $30,000 from the company's profit-sharing plan. He explained that he signed the $30,000 over to his sister so she could place it in her account and that he spent all of that money to pay back debts. On cross-examination, husband acknowledged repeated deposits into his bank accounts – 24 deposits in the year 2012, 23 in the year 2013, and two in January of 2014. These deposits totaled almost $19,000. He testified that he could not recall the source of these deposits. The evidence also established that husband spent almost $4,000 at "Charles Town" (including ATM withdrawals at "Hollywood Gambling Center"), which the court concluded was for gambling.

Although husband had experienced difficulty in providing health insurance for his stepson Kevin, he ultimately was able to do so by adding Kevin to the policy of his new wife Melissa. Husband had a child with his current wife Melissa, and he is supporting that child. Husband testified that he does not have sufficient funds to pay child support and spousal support, and pay his living expenses. Husband's new wife Melissa is employed, but the record does not indicate her income or what parts of the household expenses she covers.

Wife asked for an additional $38,100.87 in attorney's fees and costs for her efforts to enforce the Agreement.

## III.  THE TRIAL COURT'S RULING

The court found husband in willful contempt for failing to comply with the court's order. At the conclusion of the hearing, the court mentioned his spousal support arrearage, the spending on gambling that could have gone toward his child and spousal support, the unexplained $19,000 in income, his failure to provide health insurance for Kevin, and his lack of progress in reducing the attorney's fees that he owed.  The court ordered him incarcerated until he devised a purge plan, which the court indicated "must contain a substantial payment towards the arrearages."[1] The trial court stated that it accepted as truthful husband's testimony that he spent the totality of the $30,000 from the profit sharing plan.

The following day, husband presented a purge plan under which he offered to pay $13,000 toward his spousal support arrearage.  The court found that amount to be satisfactory. Husband paid that amount, over wife's objection, and the parties then scheduled an additional hearing to address child support.

After hearing additional evidence to determine whether husband's child support obligation should be modified, the court ruled as follows:

> For purposes of providing Defendant with a purge plan and notwithstanding the provisions of Paragraph 32 of the incorporated Agreement and the Final Divorce Order, which require Defendant to pay non-modifiable spousal support of $1,800.00 per month to Plaintiff, Defendant shall only be ordered to pay Plaintiff the sum of $600.00 per month towards his spousal support obligation, with the remaining $1,200.00 to continue to accrue as arrears to Plaintiff.

---

[1] The court delayed husband's incarceration to take place after his presentation of the purge plan the next day.  The court ultimately accepted husband's purge plan, so he was never actually incarcerated.

- 4 -

The court reduced the amount of child support to $400 each month, instead of the monthly $1,441 that husband had been paying. The court also concluded that husband must continue to provide his stepson Kevin with health insurance, "as long as health insurance can be provided by Defendant at little or no cost." The court declined to award any additional attorney's fees, but provided that husband "shall be permitted to pay" $100 per month to reduce his existing balance of past due attorney's fees. Finally, the court concluded by ruling that

> Defendant may not be found in contempt by this Court for so long as he continues to pay Plaintiff $400.00 per month for child support, $600.00 per month towards his spousal support obligations, and $100.00 per month towards the attorney's fees and costs set[ ]forth above in paragraph 6 of this Order (until those are paid in full).

The court thus contemplated that husband would pay a total of $1,100 each month to avoid being held in contempt.

In making the initial child support calculation, the court attributed $1,800 in spousal support income to wife and deducted the same amount from husband's income, even though husband was only required to effectively pay $600 per month.

ANALYSIS

The issues before us relating to whether the trial court erroneously circumvented the parties' Agreement and whether it incorrectly computed the child support guidelines are questions of law that we review *de novo*. Stacy v. Stacy, 53 Va. App. 38, 43, 669 S.E.2d 348, 350 (2008).

I.  THE PARTIES' AGREEMENT REQUIRES HUSBAND TO PAY ATTORNEY'S FEES
AND TO PROVIDE HEALTH INSURANCE FOR HIS STEPSON KEVIN.

Wife argues that the trial court erred in failing to enforce the terms of the parties'

Agreement with respect to attorney's fees and, further, that it impermissibly modified husband's

obligation under the Agreement to provide health insurance for Kevin.[2]  We agree.

The Agreement specifies the parties' obligation to pay attorney's fees for successful

enforcement actions and husband's duty to provide Kevin with health insurance.

The Agreement provided for "full and actual attorney's fees, investigators costs, court

costs and any other costs reasonably incurred" to the prevailing party in an action to enforce the

Agreement, provided the losing party was found to be "substantially in violation of this

Agreement."

Under Code § 20-109(C), "no decree or order directing the payment of support . . . for the

spouse . . . shall be entered except in accordance with that . . . contract."

> This provision . . . limits the authority of a trial court to make or
> modify spousal support awards when an agreement exists.  In such
> cases, the intent of the parties as expressed in the agreement
> controls, and the agreement is treated as a contract and construed
> in the same manner as all contracts.  The statute was enacted to
> require that decrees for support honor agreements made by the
> parties; it prevents a court from rewriting the parties' contract.

Doering v. Doering, 54 Va. App. 162, 171-72, 676 S.E.2d 353, 357 (2009) (internal quotation

marks and citations omitted).  "Absent equitable grounds warranting rescission, a [property

settlement agreement] cannot be judicially modified or terminated at the unilateral request of a

contract party unless the agreement expressly authorizes such relief."  Newman v. Newman, 42

Va. App. 557, 568-69, 593 S.E.2d 533, 539 (2004).

---

[2] Although husband had no statutory obligation to provide for a child who was not his
biological or adopted son, by entering into the Agreement he bound himself to abide by its terms,
including the requirement that he provide health insurance for Kevin.

Under the language of the Agreement, wife took legal action because husband had failed to abide by the Agreement. The trial court found that husband was in violation of the Agreement and, therefore, wife is entitled to her "full and actual attorney's fees, . . . court costs and any other costs [she] reasonably incurred in the enforcement of this Agreement." It was error for the trial court to sidestep the requirements of the Agreement and to deny wife recovery of her fees and costs. See Sanford v. Sanford, 19 Va. App. 241, 249-50, 450 S.E.2d 185, 190 (1994). In addition, because wife prevailed on appeal, husband is obligated to pay the attorney's fees she expended on appeal to enforce the terms of the Agreement. See id.

For the same reasons, we hold that the trial court could not modify the terms of the Agreement by holding that husband was required to provide health insurance for his stepson Kevin only "as long as health insurance can be provided by Defendant at little or no cost." The Agreement imposes on husband the obligation to purchase health insurance for Kevin without qualification. Code § 20-109(C) precludes a court from modifying the Agreement by imposing an additional term, namely that husband is only required to provide the insurance if it is low-cost insurance.

## II. THE PURGE PLAN CONSTITUTED A *DE FACTO* MODIFICATION OF THE PARTIES' AGREEMENT IN CONTRAVENTION OF CODE § 20-109(C).

Whether the purge plan also violates the terms of the Agreement presents a more complex question. The court did not absolve husband of his duty to pay the amounts due under the Agreement, but it held that he would not be held in contempt if he paid far less than the amounts due under the Agreement. As noted above, courts are required by statute to enforce the terms of an agreement between the parties. The Agreement obligates husband to pay $1,800 in spousal support on a monthly basis. While the court did not modify the *amount* due under the Agreement, it effectively modified the *timing* of the payments under the Agreement. A spouse who negotiates a monthly spousal support amount presumably counts on receiving that amount

- 7 -

on a monthly basis to meet ongoing expenses, rather than receiving payment at some point in the indefinite future.  Absent a finding of an inability to pay all or part of the obligations, the court's purge plan constitutes a *de facto* modification of the Agreement.  Code § 20-109(C) forecloses using a purge plan as a device to effectively modify the terms of the Agreement.

In fashioning the purge plan, the trial court made repeated reference from the bench to husband's inability to both support himself and to pay the onerous obligations he owes under the Agreement for spousal support, child support, and attorney's fees and costs.  These observations cannot be reconciled, however, with the court's finding that husband was in willful contempt.  Trial courts speak through their written orders, and any tension between comments from the bench and written orders will be resolved in favor of the latter.  See McMillion v. Dryvit Sys., Inc., 262 Va. 463, 469, 552 S.E.2d 364, 367 (2001).

Courts unquestionably possess the power "to punish for the wilful disobedience of a proper order."  Branch v. Branch, 144 Va. 244, 251, 132 S.E. 303, 305 (1926).  As a matter of due process, however, a court may not hold a person in contempt "when it is clearly established that the alleged contemnor is unable to comply with the terms of the order."  Turner v. Rogers, 131 S. Ct. 2507, 2516 (2011) (quoting Hicks v. Feiock, 485 U.S. 624, 638 n.9 (1988)).  The idea behind civil contempt is that the contemnor "'carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do."  Gompers v. Buck Stove & Range Co., 221 U.S. 418, 442 (1911) (quoting In re Nevitt, 117 F. 448, 461 (8th Cir. 1902)).  He does not hold the keys to his freedom whose pockets are empty.  To the extent on remand the court concludes under the evidence that husband is truly unable to pay all of the amounts due under the Agreement, the Due Process Clause

forecloses a finding of contempt with respect to those amounts he is unable to pay.[3] We note in this connection that "[o]nce nonpayment [of a support order] is established, the burden is on the obligor to provide justification for the failure to comply." Barnhill v. Brooks, 15 Va. App. 696, 704, 427 S.E.2d 209, 215 (1993).

To determine whether a contemnor is unable to pay, the court must examine the resources available to the alleged contemnor,[4] the totality of the obligations due under the Agreement, and the ordinary (but not extravagant) expenses necessary to live, such as housing, food, transportation, and utilities.

Under settled law, "[i]t is within the discretion of the trial court to conduct civil contempt proceedings." Petrosinelli v. People for the Ethical Treatment of Animals, Inc., 273 Va. 700, 706, 643 S.E.2d 151, 154 (2007) (internal quotation marks and citations omitted); see also Code § 20-115 (providing that a court "may" exercise the power of contempt for persons who have willfully refused to pay court-ordered child or spousal support); Wells v. Wells, 12 Va. App. 31, 36, 401 S.E.2d 891, 894 (1991) (holding that it was "within the discretion of the trial court whether or not to find [a husband in violation of a property settlement agreement] in contempt"). The exercise of that discretion, however, cannot mean a selective enforcement that is tantamount to a modification of the parties' Agreement. In addition, an agreement incorporated by, but not merged into, a divorce decree may also be enforced under contract law. Rubio v. Rubio, 36 Va. App. 248, 253, 549 S.E.2d 610, 612-13 (2001).

---

[3] We leave to the trial court the decision whether and to what extent additional evidence is needed on remand.

[4] In addition to his salary, husband made deposits in excess of eight thousand dollars in both 2012 and 2013, with additional similar deposits in 2014, for total deposits of approximately $19,000 in 2012, 2013, and 2014. When asked about these sums, husband was struck with amnesia as to their source. Regardless of the source, these payments constitute income above and beyond his salary that must be included in determining his ability to fulfill his obligations under the Agreement.

### III. THE CHILD SUPPORT GUIDELINES MUST BE RECALCULATED.

Finally, wife assigns error to the court's calculation of child support. While the purge plan allowed husband to pay far less than the full amount of spousal support provided in the Agreement, the court included the full $1,800 monthly obligation in determining wife's income when calculating child support. Wife correctly points out that under Code § 20-108.2(C)(4), a court must calculate gross income based on "spousal support *received*" (emphasis added) rather than on amounts due but not actually received. Although a trial court retains the discretion to deviate from the default guideline, it must correctly calculate the guideline as an initial matter. Richardson v. Richardson, 12 Va. App. 18, 21, 401 S.E.2d 894, 896 (1991). The trial court erred in including the full $1,800 monthly support when, first, husband had not been paying that amount and, second, husband was not ordered to pay the full $1,800 under the purge plan. Because we vacate the purge plan, we also remand for reconsideration of the child support, which was related to, and will be affected by, the court's resolution of the show cause for contempt.

### CONCLUSION

The trial court erred in declining to assess attorney's fees and in holding that husband was required to provide health insurance for Kevin only if that insurance proved to be of little or no cost. We also hold that the trial court erred in fashioning a purge plan that constituted an effective modification of the parties' Agreement. Accordingly, we vacate the judgment below and remand for an assessment of attorney's fees, including appellate fees, that wife incurred in enforcing the Agreement, and for further proceedings not inconsistent with this opinion.

Reversed and remanded.