COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Chaney, Frucci and Senior Judge Annunziata

MIREILLE B. TSHITEYA

MEMORANDUM OPINION[*]

v.      Record No. 0806-23-4                                     PER CURIAM
                                                                AUGUST 13, 2024

GREENHOUSE BOARD OF DIRECTORS, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge

(Mireille B. Tshiteya, on brief), *pro se*.  Appellant submitting on
brief.

(Eileen R. Geller; O'Hagan Meyer, on brief), for appellees.
Appellees submitting on brief.


Mireille B. Tshiteya appeals an order from the Circuit Court of Fairfax County granting

summary judgment in favor of the Greenhouse Board of Directors: Connie Gray, Denny Crouch,

Sharon Hennessee, Tanja Heaney, Dan Hogsed, John Edgecomb, Alan Thompson, Victoria

Bloom, and Patricia Fuentes (jointly referred to hereafter as "the Board").  Finding no error, we

affirm the circuit court's judgment.

## I.  BACKGROUND

After an extensive search, Tshiteya jointly purchased with two of her siblings a

condominium in the Greenhouse Condominiums in Alexandria, Virginia, in 2022.  In looking to

purchase, one of their search criteria was a monthly condominium fee below $1,000.  As such,

when they encountered a unit available in the Greenhouse Condominiums with a monthly

condominium fee of $913.50, they made an offer to purchase it.  The offer was accepted, and on

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

May 26, 2022, FirstService Residential[1] issued a Certificate for Virginia Condominium Resale (hereafter "the resale certificate"). As was required by Code §§ 55.1-1990(D) and 55.1-1991(A)(3) at the time,[2] the certificate stated the condominium fees current as of a date specified on the resale certificate (that being $913.50). Unbeknownst to Tshiteya, on the day before FirstService completed the resale certificate,[3] the Board voted to increase the monthly assessment to $1,013.75 starting on July 01, 2022.[4] As such, while the $913.50 quoted in the resale certificate was the current amount of the condominium fees as of the day that it was issued (and as of the date Tshiteya closed on the condominium, that being June 24, 2022), the fees were increased starting July 2022.

Upset about the increased monthly assessment after she closed on the unit, Tshiteya sought an injunction barring the Board from collecting the increased condominium assessment for the 2022-23 fiscal year, "or for as long as the [c]ourt deem[ed] equitable" in her initial complaint. The Board demurred, and the circuit court sustained the demurrer with leave to refile.

Tshiteya filed an amended complaint and, later, a second amended complaint. In the second amended complaint, Tshiteya pleaded a single count of constructive fraud on the theory that the Board misrepresented a material fact when it issued the resale certificate showing the

[1] FirstService Residential is a third-party management company retained by the Board of the Greenhouse Condominium Association that generated the resale certificate.

[2] Since that time, these statutes (and therefore the prior resale disclosure requirements in the Virginia Condominium Act) have been repealed effective July 1, 2023. The resale disclosure requirements have since largely been recodified into the "Resale Disclosure Act," which applies collectively to properties subject to the Property Owners' Association Act, the Virginia Condominium Act, the Virginia Real Estate Cooperative Act, or the Horizontal Property Act. *See* Code § 55.1-2307 et seq.

[3] The date of the vote was May 25, 2022.

[4] Notably, the Board notified the condominium seller of this increase the day after the vote, which was also the same day that FirstService generated the resale certificate.

then-current monthly assessment of $913.50 without notifying her of the pending increase to $1,013.75. The Board filed a motion for summary judgment, which the circuit court granted in favor of all defendants. Tshiteya appeals.

On appeal, Tshiteya raises seven assignments of error, arguing that the circuit court erred in granting the motion for summary judgment and claiming (1) that the resale certificate failed to provide her with "effective" notice of the pending increase in the monthly assessment fee that would occur shortly after Tshiteya closed on the condominium, (2) that the trial court's "'literal' reading of the statute" as requiring only that the resale certificate state the monthly condominium fee in effect on the date specified in the certificate yielded an erroneous "absurd result," (3) that the alleged failure to apprise Tshiteya of the pending increase was a material omission constituting constructive fraud, and (4) that the trial court "erred in finding that there is no fraud involved when the [Board]'s disclosures appear to comport with the 'literal' language of the statute" without notifying her of the pending fee increase.

## II. ANALYSIS

"[S]ummary judgment '[may] not be entered' unless no 'material fact is genuinely in dispute' on a controlling issue or issues and the moving party is entitled to such judgment as a matter of law." *Howard v. Harris*, 80 Va. App. 365, 375 (2024) (alterations in original) (quoting *Mount Aldie, LLC v. Land Trust of Va., Inc.*, 293 Va. 190, 196 (2017)). *See* Rule 3:20. "[I]n an appeal of a decision awarding summary judgment, the trial court's determination that no genuinely disputed material facts exist and its application of law to the facts present issues of law subject to de novo review." *Howard*, 80 Va. App. at 375 (alteration in original) (quoting *Mount Aldie*, 293 Va. at 196-97). "A factual issue is genuinely in dispute when reasonable factfinders could 'draw different conclusions from the evidence,' not only from the facts asserted but also from the reasonable inferences arising from those facts." *Id.* (quoting *AlBritton v.*

*Commonwealth*, 299 Va. 392, 403 (2021)). "[W]e review the record applying the same standard a trial court must adopt in reviewing a motion for summary judgment, accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Id.* (alteration in original) (quoting *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009)). Furthermore, "[w]e review issues of statutory interpretation de novo." *Taylor v. Commonwealth*, 77 Va. App. 149, 162 (2023). "This same *de novo* standard of review applies to determining the proper definition of a particular word in a statute." *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 537 (2015)).

A. *The circuit court did not err in finding that the resale certificate complied with the plain language of the statute nor that the statute at issue leads to any "manifest absurdity."*

"In any case involving statutory construction we begin with the language of the statute." *Williams v. Boggess*, 80 Va. App. 569, 575 (2024) (quoting *Appalachian Power Co. v. State Corp. Comm'n*, 284 Va. 695, 705 (2012)). "[C]ourts 'are required to ascertain and give effect to the intention of the legislature, which is usually self-evident from the statutory language.'" *Eley v. Commonwealth*, 70 Va. App. 158, 163-64 (2019) (quoting *Armstead v. Commonwealth*, 55 Va. App. 354, 360 (2009)).

At all times relevant, the Virginia Condominium Act required, inter alia, that, "[i]n the event of any resale of a condominium unit by a unit owner other than the declarant,"[5] the unit owner "disclose in the contract (i) the unit is located within a development that is subject to the Condominium Act" and that "(ii) . . . the seller obtain from the unit owners' association a resale

---

[5] Under the Virginia Condominium Act, the "declarant" is the entity that "create[s]" the condominium by "record[ing] a condominium instrument" as required by law. *Westgate at Williamsburg Condo. Ass'n v. Philip Richardson Co.*, 270 Va. 566, 574 (2005). *See* Code § 55.1-1907; *see also Unit Owners Ass'n v. Gillman*, 223 Va. 752, 762 (1982) (stating "[n]o condominium shall come into existence in Virginia except on the recordation of condominium instruments pursuant to the . . . Condominium Act").

certificate and provide it to the purchaser." Code § 55.1-1990(B).[6] It further required that the certificate contain, among other things, "[a] statement, including the amount, of all assessments and any other fees or charges *currently* imposed by the unit owners' association." Code § 55.1-1991(A)(3) (emphasis added).[7]

In construing a statute, "[w]e must . . . assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute." *Barr v. Town & Country Properties, Inc.*, 240 Va. 292, 295 (1990). In the present case, the General Assembly carefully delineated what information the resale certificate must contain and required that this information "shall be current as of a date specified on the resale certificate" itself. Code § 55.1-1990(D). Furthermore, the General Assembly specifically required that the "statement of the assessments" to be included in the resale certificate reflect those "*currently imposed* by the unit owners' association." Code § 55.1-1991(A)(3) (emphasis

---

[6] As previously mentioned, these statutes have been repealed, and the resale disclosure requirements have been recodified under Code § 55.1-2308 of the Resale Disclosure Act. *See* Code § 55.1-2307 et seq. Under "the fundamental principles of statutory construction[,] . . . retroactive laws are not favored, and . . . a statute is always construed to operate prospectively unless a contrary legislative intent is manifest." *Berner v. Mills*, 265 Va. 408, 413 (2003); *see also City of Charlottesville v. Payne*, 299 Va. 515, 530 (2021) (stating "[u]nless a contrary intent is manifest beyond reasonable question on the face of an enactment, a statute is construed to operate prospectively only"); *Bailey v. Spangler*, 289 Va. 353, 359 (2015) (stating "[a]bsent an express manifestation of intent by the legislature, this Court will not infer the intent that a statute is to be applied retroactively"); *Washington v. Commonwealth*, 216 Va. 185, 193 (1975) (stating "[t]he general rule is that statutes are prospective in the absence of an express provision by the legislature"). In the case of applicable statutes of the Resale Disclosure Act, the statutes were not designated to apply retroactively. *See, e.g.*, Code §§ 55.1-2309(A), 55.1-2309(D), 55.1-2310(4). Regardless, it can be noted that under Code § 55.1-2309(A), the seller is still required to "obtain the resale certificate from the association and provide such resale certificate to the purchaser."

[7] Notably, Code § 55.1-2310(4) still requires that the resale certificate contain "[a] statement of the amount and payment schedules of assessments and any unpaid assessments currently due and payable to the association." Further, Code § 55.1-2309(D) still requires that "[t]he information contained in the resale certificate shall be current as of a date specified on the resale certificate."

added).  In construing a statute, we must "giv[e] to every word and every part of the statute, if possible, its due effect and meaning."  *Eley*, 70 Va. App. at 163 (quoting *Epps v. Commonwealth*, 47 Va. App. 687, 714 (2006) (en banc), *aff'd*, 273 Va. 410 (2007)).  Additionally, the "words used should be given their ordinary meaning, unless it is apparent that the legislature intended they should receive a broader or narrower construction."  *Spindel v. Jamison*, 199 Va. 954, 957 (1958).  The ordinary meaning of "current" and "currently" is clear— they mean "of the present time"[8] or, simply, "now."[9]

Tshiteya asks us to construe Code §§ 55.1-1990(D) and 55.1-1991(A)(3) as requiring disclosure of both current and prospective information.  However, "[w]hen the General Assembly omits language from a statute that is present in surrounding statutes, we find it to be 'an unambiguous manifestation of contrary intention' of the legislature."  *JSR Mech., Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 385 (2016) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 428 (2012)).  *See also Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 654 (2004).  Therefore, it is evident when comparing with the language of the immediately preceding subsection, Code § 55.1-1991(A)(2) (stating that the resale certification must identify any special assessments "during the current or the immediately succeeding fiscal year"), that the General Assembly knew how to add such a requirement but chose not to do so.

Tshiteya further contends that we are not obliged to "apply the plain meaning of the words" because "doing so would lead to an absurd result."  In her view, the circuit court's "'literal' reading of the statute" yielded "absurd results" by depriving her of "effective" notice of the condominium assessment, which was scheduled to rise shortly after she closed on the property.  It is true that courts are not obliged "[t]o adopt a literal construction of [a statute], as it

---

[8] *Current, Cambridge Dictionary*, https://perma.cc/W6UG-L7DQ.

[9] *Currently, Webster's New Universal Unabridged Dictionary* (1983).

stands," when doing so "would lead to absurd results." *Hutchings v. Commercial Bank*, 91 Va. 68, 73 (1895). However, courts will not depart from that text "unless a literal interpretation of the language would result in a manifest absurdity." *Hall v. Commonwealth*, 296 Va. 577, 585 (2018) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). A statute is not manifestly absurd merely because it produces a result that seems illogical, unjust, or ill-advised to one of the parties in litigation. Rather, manifest absurdity "describes situations in which the law would be internally inconsistent or otherwise incapable of operation" if the statutory text were literally applied. *Id.* (quoting *Covel v. Town of Vienna*, 280 Va. 151, 158 (2010)). This is a high bar, and Tshiteya's dissatisfaction with the law's operation as written fails to surmount it. As such, we find that the circuit court did not err in finding that the resale certificate complied with the plain language of the statute nor that the statute at issue leads to any "manifest absurdity."

B. *The trial court did not err in granting summary judgment.*

Tshiteya also claims that the Board's failure to apprise her of the increased monthly assessment that she would be required to pay was a "misrepresentation of [a] material fact."[10] "Even if [the Board] did not intend to mislead" her, she argues that they misrepresented the amount of the assessment that she "was actually liable to pay," that she relied on this "misrepresentation," and that she "suffered damages because of" it. Tshiteya argues that this

---

[10] Additionally, Tshiteya argues that the "circuit court judge erred in finding that there were no material facts in dispute when there is a factual claim of constructive fraud." As previously stated, "summary judgment '[may] not be entered' unless no 'material fact is genuinely in dispute' on a controlling issue or issues and the moving party is entitled to such judgment as a matter of law." *Howard*, 80 Va. App. at 375 (alteration in original) (quoting *Mount Aldie*, 293 Va. at 196). *See* Rule 3:20. This Court shall "review the record applying the same standard a trial court must adopt in reviewing a motion for summary judgment, accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Howard*, 80 Va. App. at 376 (quoting *Fultz*, 278 Va. at 88). Contrary to the assertion, Tshiteya does not identify material facts in dispute, nor does she claim that the information in the resale certificate was inaccurate.

constitutes constructive fraud, causing the circuit court to have erred by granting summary judgment.

Virginia has long recognized that "[f]raud may be actual or constructive" and that one can be found liable for constructive fraud "irrespective of [the] moral guilt of the fraud feasor." *Moore v. Gregory*, 146 Va. 504, 523 (1925). To prevail on a claim of constructive fraud, a party "must show by clear and convincing evidence that the defendant negligently or innocently made a false representation of material fact, and that the plaintiff suffered damage as a result of h[er] reliance upon that misrepresentation." *SuperValu, Inc. v. Johnson*, 276 Va. 356, 367 (2008).

In the case at hand, the record does not demonstrate that the Board made a misrepresentation to Tshiteya. The Board was required to deliver the resale certificate "in accordance with the written request and instructions of the *seller* or the *seller's* authorized agent" and ensure that the resale certificate stated the association fee *currently imposed* as of a date certain specified in the certificate. Code § 55.1-1991(A)(3), (C) (emphasis added). The facts of the record show that the Board did so.

The Board provided complete and correct information to the seller.[11] The Board also provided the seller with a resale certificate that reflected the correct monthly assessment as of the date of the certificate and simultaneously notified the seller of the pending increase in the assessment.[12] The Board thus completed its obligations, but Tshiteya had obligations of her own. "Virginia[] adhere[s] to the common law doctrine of *caveat emptor* as to sales of real

---

[11] As to the increase in the monthly assessment to take effect on July 1, 2022, the Board notified the seller of this increase by e-mail on the very next day after adopting the increase, which just also happened to be the same day FirstService generated the resale certificate.

[12] The Board also argues that Tshiteya's constructive fraud claim fails because the increase in the monthly assessment became effective after she purchased the condominium, and "fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." *Blair Const., Inc. v. Weatherford*, 253 Va. 343, 346-47 (1997). Given the nature of our holding, we need not address this argument.

property." *Watson v. Avon Street Business Center, Inc.*, 226 Va. 614, 618 (1984) (citing *Kuczmanski v. Gill*, 225 Va. 367 (1983)). "[C]aveat emptor . . . requires a purchaser to use ordinary care in *making inquiries* and inspecting the premises before contracting to purchase." *Virginia Natural Gas Co. v. Hamilton*, 249 Va. 449, 456 (1995) (emphasis added). "Where ordinary care and prudence are sufficient for full protection," the doctrine provides, "it is the duty of the party to make use of them." *Id.* (quoting *Kuczmanski*, 225 Va. at 369). "[I]f false representations are made . . . [but] the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him," the law "will leave him where he has been placed by his own imprudent confidence." *Id.* (quoting *Kuczmanski*, 225 Va. at 369).

In the case at hand, the Board made no misrepresentations, and Tshiteya had access to the seller, who had complete information on the current and future amount of the monthly assessment. The resale certificate and accompanying disclosure packet notified Tshiteya that she was entitled to "a copy of any approved minutes of the executive organ and unit owners' association meetings for the six calendar months preceding the request for the resale certificate" and a copy of the Greenhouse bylaws and stated that the bylaws were to be included with the resale certificate. It was made clear that Tshiteya was "responsible for examining the information contained in and provided with the resale certificate," which she was expected to "carefully review." Critically, these documents notified Tshiteya that she had the right to "*request an update* of the resale certificate." (Emphasis added). The Greenhouse bylaws specify that the Greenhouse fiscal year runs from July 1 to June 30, annually, and that the Board "shall adopt a budget" each year on or before June 1. Nothing in the record indicates that Tshiteya did not receive the bylaws, which put her on *at least* constructive notice that the Board *could* adopt a new budget and increase the monthly assessment before she completed the purchase. Under

"[t]he rule of *caveat emptor*," Tshiteya "is bound not only by *actual* notice, but by *constructive* notice as well, which is the same in effect as actual notice." *Smith v. Woodward*, 122 Va. 356, 368-69 (1918).[13]

Given the contents of the resale certificate and accompanying materials, Tshiteya could, with the exercise of ordinary care, have discovered the increased monthly assessment prior to closing on the condominium. "[T]he law gives no remedy for [such] voluntary negligence."[14] *Virginia Natural Gas*, 249 Va. at 455 (quoting *Lake v. Tyree*, 90 Va. 719, 723 (1894)). As such, we find that the circuit court did not err in granting summary judgment.

## III. CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[13] "*Caveat emptor* is one of the best settled maxims of the law, and applies exclusively to a purchaser. [Sh]e must take care, and make due enquiries . . . . [Sh]e is bound, not only by *actual*, but also by *constructive* notice." *University of Richmond v. Stone*, 148 Va. 686, 695 (1927).

[14] It is a well-known exception to this doctrine that a "vendor must not say or do anything to throw the purchaser off his guard or to divert him from making the inquiries and examination which a prudent man ought to make." *Horner v. Ahern*, 207 Va. 860, 864 (1967) (citing *Lake v. Tyree*, 90 Va. 719, 724 (1894)). Tshiteya makes no such allegation here beyond her arguments concerning the construction of Code §§ 55.1-1990(D) and 55.1-1991(A)(3), which we have rejected.